Thank you. We are now back from our recess and ready to proceed with the case of Beverly Hale v. BAE Sys. San Fran. Ship Repair, Inc. If you're ready, you may begin. Thank you very much. I am Joshua Glellen. Appearing on behalf of the widow Hale, I would like to reserve 4 minutes of my time for rebuttal. Do the best. I'll try to track your time as well, but do the best you can to track it. Thank you. Thank you. I appreciate it. All we are asking is that this forfeiture provision, which the Supreme Court has already termed harsh and incongruous and a trap for the unwary, but has held that it has to be The Benefits Review Board said in its decision in the Verducci case, the sole issue is whether claimant or someone with the authority to do so on her behalf, quote, entered into a settlement with a third person. If she did, Section 33G bars her claim. If she did not, her claim under Section 9 would not be barred. We completely agree with that. What we don't agree with is the proposition that she inadvertently entered into a settlement, which she never signed, which she never was a party to litigation of, any third party case, and of which she to remove herself from any tort litigation against the asbestos defendants. She wanted to preserve her right to her longshore death benefits remedy. Other members of her family had no longshore death benefits remedy, so they, of course, did want to pursue third parties for wrongful death. The ALJ relied simply on the fact that some of the releases, a couple of the releases, referred to heirs of the decedent. The other heirs were all listed as parties to the wrongful death proceedings, and the release was not, excuse me, the release was on behalf of the named plaintiffs, which were the other family members, but not Mrs. Hale. We review the board's decision for substantial evidence? No, actually, that's not true. The board has no fact-finding authority, so the board and the court review the ALJ's decision for substantial evidentiary support. And our review is de novo, in your view? Yes, absolutely. On the legal question, yes. Yes, and what about factual findings? Oh, then if the ALJ's decision is supported by substantial evidence, then it must be affirmed. So how do you respond to the ALJ's finding, I think, that Mrs. Hale was, I think it may be fair to say, less than credible in terms of her knowledge about these third-party settlements? Well, he doesn't actually make any finding contrary to her testimony. Yes, he said it's diminished credibility, because he couldn't believe that she was as unfamiliar as she purported to be with the legal terminology. She didn't understand, for example, what an heir was. Well, since the release is referred to an heir as defined by a certain section of the statute, apparently the lawyers who drafted that provision didn't know what an heir was either, because they're not defined in that provision. Once upon a time, the wrongful death statute in California said the heirs have the right to bring the proceedings. The word heir never was defined in the provision, and the word does not even appear in that provision since then. So that's not as obvious a proposition as the ALJ seemed to imagine it was. But in any event, as I say, he declared that her testimony was of compromised credibility, but he did not make any finding that she was aware. He certainly did not make any finding that she received penny one. So those are findings that if he had made them, we would have attacked the substantial evidentiary basis for, but he didn't make them anyway. So is it undisputed between you and the other side here that the widows are the persons entitled to compensations for purposes of this Act? Yes, it is. Okay. And so can you talk to me a little bit about the Stadt-Muller case? Stadt-Muller case. Who, in your mind, would qualify as a representative in this case within the 3G? No one would qualify as a representative within that. The daughter who was the personal representative of the decedent was perfectly, and she was indeed his legal representative. Well, personal representative, yes, what the statute refers to, of the decedent. And so her acceptance of a settlement, if it had not already been barred, would have barred his rights to lifetime benefits, disability benefits and medical benefits. He had those rights. He never asserted them. Instead, he went the third-party tort action route. And the first time he acceded to a settlement with any one of those defendants, that was the end of his longshore claim. He had none, and he never asserted one. To the extent the daughter then signed a release as the personal representative of his estate, again, if he had not entered into any settlements before his death, so as to bar his longshore claim, her actions as his personal representative would have barred the estate's claim for his life. Well, I'm still trying to figure out whether or not, you know, in this situation, or just whether the decedent's daughter here, is she the personal representative? It sounds like she's not, or she is, in terms of the Section 33G, or she, because she was a successor in interest in the case, the other civil action, whether or not she is the legal representative of the deceased in that action, and if so, what does that mean in terms of being the personal representative in the case before us? Well, I don't think there was any claim that she was the personal representative. She cannot have been the personal representative of all the heirs in the lawsuits, because of individual heirs were named, and if any one individual heir is named under California wrongful death law, then the personal representative of the estate can only be there in that capacity, but not as personal representative of all the heirs. That is, if no one else had been named as plaintiffs in the wrongful death actions, then she would have been, she, she the daughter, I'm sorry, she the daughter who appeared as personal representative, successor in interest to the decedent, would have represented all the heirs, and would have been entitled to sign a release on behalf of all the heirs. That was not the situation, because the other, there were other individual heirs named, and yes, counsel, Judge Gould, if I can interject, please, a question and clarify this for me, please. What's the result from your client's point of view, if instead of focusing on whether the widow of Hale entered the agreement, which I take it is your focus in the appellate brief, we focus on whether the daughter was a personal representative of the decedent? No, I don't think that, that whether she was personal representative of, we don't contest that she had the status as personal representative of the decedent, but a settlement of the decedent's cause of action would be completely irrelevant to the right of his widow to death benefits, the person, the person entitled to compensation. Now, as to his lifetime benefits, he was the person entitled to compensation, and by settling with any tortfeasor, he gave up his right to a longshore remedy, because it would be barred by Section 33G. But she was not the representative of all the heirs, only of the decedent, and we know she could not have been, have had the status as personal representative, representing all of the heirs, because individual heirs besides her were named as plaintiffs in the, in the tort actions. Under California law, as long as someone, which was why she had to be named. Mrs. Hale, the widow, had to be named in the wrongful death action initially, and she was named, since she declined to be a plaintiff, she had to be named as a defendant. The son also had not been reached, so he had not agreed to be a plaintiff, so he also had to be named initially in the complaint, the wrongful death complaint, as a defendant. Well, he subsequently chimed in and said, sure, sure, I want in, and the amended complaint made him a plaintiff, along with his sisters. But the widow, instead of being transferred from defendant status to plaintiff status, simply secured a dismissal, her dismissal from that lawsuit. So she was not a party, nor could the personal representative have been her representative in those, in the wrongful death proceeding, because, as I say, the other, the other could not represent all the heirs. Thank you, counsel. Do you want to reserve the balance of your time? Why? Yes, please. Thank you. Good morning. May it please the court, my name is Frank Hugg. I represent BAE Systems, San Francisco Ship Repair, and Signal Mutual Indemnity. I want to take just a different slight tangent. This type of litigation is very common, injured worker, plaintiff, third-party defendants, and then the employer and carrier asserting whatever lien claims may exist. It's a very frequent litigation here in California, and it's subject to a lot of mediations and mediation sessions, but I was at one of those the same group of three, and one of the mediators said to me, he said to me, Hugg, you are a fact lawyer, and for the life of me, I couldn't figure out what he meant for a few days, and then I thought, he says, well, I dwell on the facts that make up the case. The pre-death recoveries in this case, these are facts of this case, the excerpts of record, page 18, gross settlements that were before death in this case, this is Hale's case, were $123,891. The net recovery before the death of the employee was $74,847. We all know in this room that the widow is not entitled to any, is a person entitled to any benefits whatsoever for exposures occurring before death. After she died, the amount of money that we're discussing that was paid to the family members was 400, settlement of $450,754 gross, and fees of net recovery of $3,010.70. That was distributed equally among three children, the three adult children, none to the, allegedly none to the widow. The issue before this court is to how to apply Section 33 such that it protects the interest of the employer and carrier, which the state of Calvert has said, the employer and carrier are the real party in interest. It's a rarity among the workers' compensation laws and certainly rare under the Longshore Act, but the act is interpreted to protect the employer under Section 33 and the carrier, and it's rare, most, and all workers' compensation statutes are put in place to achieve humanitarian benefit as part of its socially approved goals. In this instance, Section 33 and the two subsections that issue F and G are to protect the interest of the employer, who may have paid some money and may not have. To answer the question about Stadmiller, the claimant's argument was basically that the widow in Stadmiller was seeking to withdraw from a settlement that had been entered into. That is true. She had done several things to avoid it, namely she had been misinformed, she claimed, by her attorney, Wartnick. He refused to sign a release, and she was aware that her attorney had dismissed the action, but before doing so, he had earmarked how much money would be paid on her behalf. In this case, Mrs. Hale has done everything possible, she thinks, or tried to convey that she's walking away from the interest of how to divvy up that $430,000. In fact, she did that with a goal of managing the family affairs. When asked about whether or not she considered herself to be the person in charge of the money that was received, she said that she was. When asked about whether or not she understood how she was to exercise those responsibilities, she said she was the person in charge. She was also in charge of the disbursement of the state compensation funds from yet another statement, from another source. So are you arguing then that the daughter was basically acting on... Acting as an agent on behalf of her mother. And what's your best evidence to support that? Because normally, something signing... Well, I was puzzled by that too, but once I'd learned more about agency law and the ratification that was required, then I understood. Her position was that she should control the disbursements. Otherwise, how had these funds been issued? I don't know if that answers your question. No. Basically, her statement that she should control or your inference... I'm trying to figure out if it was a statement she made or that she should control... In the record, she said, yes, she was in charge of the money that was being received after the husband's death. And the wrongful death suit in this particular claim, what was she referring to? Do we know based on the statement that she made? Because... She said, she agreed, I was the one in charge of the disbursement of the funds. And said, you represented the family. She said, yes. Words to that effect. And there's no doubt that the daughter was acting as an agent for both her daughters. Under 33G is also the person's representative. One could make that argument, but I think... I guess I'm wondering if you are making that argument. Pardon? Are you making that argument? Well, yes and no. Okay. Okay. And the reason is because I think the widow can also be the personal representative. So I don't know if they were together or combined, but the family made a decision how to disperse the funds. And the person who admitted she was in charge of it agreed with that. When the daughter was asked about her role in this, and she finally said... I said, well, there are a few more... I'm through questioning you about a role in this with your mother. And she said, thank God. They were involved heavily with each other in making decisions about how to disperse the money. Is there anything beyond what you have just said that shows that there was an agency relationship? Is there anything that the daughter signed or that the widow signed? Yes. There are numerous releases, but we focused upon two releases here. That's to Pfizer and... Pfizer and CBS. No, that's not right. It was to Pfizer and... It was CBS. Pfizer settled for 7,000. CBS settled for 2,000. Those settlement documents were signed by the daughter. And there's no evidence that the signature was signed by the mother or the widow. But that does not... Under state law, as I believe the claimants have conceded under state law, the person... You don't have to have the person who is the beneficiary sign the release. In fact, there are cases where there's no signature, as is here. She does not sign any releases. But nonetheless, within the four corners, and they make references to the heirs. Clearly, the widow is an heir. Then she, in effect, has approved the releases. There's that mother. Despite the fact that the mother had said she was not part of that lawsuit, she had signed that documents to that effect? Well, she didn't sign the documents, but she sure had no trouble saying that she was in charge of the post-death affairs of her and the three children. She was the one who's not mentioned by name in the releases, but she's certainly the one who was acting on behalf of the family. In any event, the comparison was made of how much money she would have been entitled to for the period of time, and it was some $81,000. That $81,000 is obviously much greater than the $7,000 and $2,000 other defendants, the third party defendants put up. Therefore, she's a person entitled to compensation, but she lost that further entitlement when she settled for amounts less than to what she would have been authorized to obtain under the act. So I think that covers the major points that I wish to make. As I said, there was a net recovery of $74,000, the three children divided, and gross $123,000. In any event, that's all I have at this time, although I'd be happy to answer any more questions. The trouble with this is that the claimants refuse to recognize what the estate of a coward imposes. The real party in interest is the employer. The requirements of settlements be conducted in strict compliance with 33G1 and 2 are the reasons why this claim should not be allowed, and the dismissal of the death claim should be upheld. The Supreme Court and coward recognize that the application of this rule in such a manner would result that workers of the families may be stripped of their long-short benefits, but that is the forfeiture penalty created for the trap by the unwary. In this instance... Thank you, Counsel. Counsel, may I interject one question, please? Yes, Judge. This is Judge Gould. And I'll apologize in advance for not specializing in the area of the law perhaps well enough. But if the widow did not enter into the agreement that was signed by the daughter, but the daughter is a personal representative for those purposes, she was, we argue, an alternative personal representative. But that argument is that the daughter would be a personal representative of the mother. Is that what you're saying as opposed to the decedent? No, I think she could be qualified as far as the decedent. Okay. If you read through the details of their testimony, both the two children, it'll become apparent how they were involved and worked together. And it wasn't done by accident. It was by concentrated scheme or effort to avoid 33G. And both the ALJ, to answer your prior question about substantial evidence, had made credibility determinations that are responsive to how to disperse the funds. As the conclusion was stated in Cowart, Congress has spoken with great clarity to the precise question raised by this case, namely how to apply 33F and G. And we contend that those criteria have been met. When does a person's representative come into play in here? I mean, is that just when the person entitled to compensation is deceased? I could be wrong, but I think that was upon the 1982 amendments. There were prior amendments in 72 were the major ones, 84 were the 1984 amendments were the ones that put in some answer. The answer is, I believe, 1984 amendments. No, no, no, but if I'm asking who is the person, if the person entitled to compensation here. There's only one for that purpose. There's one person in that person. Children. Well, originally, though, it was the employee, correct? No, the person entitled to compensation was the employee, correct? Correct. All right. And then it says in parentheses, or the person's representative. That person's representative is the widow here, correct? Yes. Yes. Okay. So she's the person. She's the person's representative. Yes. All right. And so if she's the person's representative, then how is the daughter the representative? Well, the widow is the person. It's pre and post death. The widow was not a person entitled to compensation before death. She had that status after death. But when was the settlement entered? After the person died? No, no, all the settlements, it's when the money is paid. No, I understand. Okay. I'm sorry. Go ahead. The person entitled to compensation doesn't come into existence under 33 F and G until death. Everything after death becomes her entitlement as a person entitled hers, as a P.E.T., person entitled to compensation. Help me with the timing here. When did the settlement, the civil settlement for the wrongful death occur? It occurred over many months and years. Was it after the employee passed away? Yes. All right. That's the bright line. Okay. I'm not sure that helps you. Well, I think if you look at the larger picture of how the person entitled to compensation must act under 33 G, 1 and 2, the settlement is greater than the amount of compensation to which she would have been entitled to the employer's protective of any future benefits. If it's a judgment out there, it's not a bar. However, any of the claimants, including the widow here, settled for less than the amount they would be entitled to, then the widow would be barred. Okay. Thank you very much. Unless Judge Gould has any other questions or Judge Cole? No further questions from me. Thank you. Thank you. May it please the Court, I hope I can clear up a couple of things. During his lifetime, Mr. Hale was the person entitled to compensation, disability benefits and medical benefits for the treatment of his employment-related disease. He never filed a claim for that because he was pursuing the tort visas and he had a better remedy against them than what he would have received in compensation for the period of his final disability and his medical benefits. Once he died, his right to compensation passed to his estate if he had still had any right to compensation, but it had already been foreclosed by his pre-death settlements. After he died, the widow, at the time of his death, became a person entitled to compensation. And the only person? And the only person. The children were adults and not disabled, not incapable of self-support, so they were not entitled to anything under the Longshore Act. Only the widow was, which was why she sought to preserve that Longshore death benefits remedy and not to take any part in the tort settlements. And so once Mr. Hale died, then is it the person's representative who takes over his position? Takes over his position, yes. Right. So in this case, when we read the section, G. Yes. And it says if the person entitled to compensation or the person's representative. Yes. Is there any way to read that, that only the widow is the person's representative? No, there is not. The widow never was appointed the personal representative of his estate. She simply was a widow. She was qualified to seek a wrongful death remedy and also was a person entitled to compensation. But isn't she the person's representative here? No, never. How is that she not the person's representative? Not her legal representative. Doesn't she become the person's representative for purposes of 33G? No, no. And if she had, I mean, the actions of the personal representative of the deceased would only bar the deceased rights. And he wasn't seeking any. He'd already foregone his longshore rights by seeking and settling tort actions. To the extent there were third-party defendants who had not already settled during his lifetime, the personal representative of his estate was able to settle those actions. But she couldn't settle the widow's rights, tort rights, wrongful death rights, because she did not have any authority to do so. If she had done so and the widow had then accepted proceeds of such settlements, well, perhaps that would have been a ratification by the widow of the ostensible agent daughter's actions in signing away her wrongful death rights. But that's not what happened. She never got a penny from these settlements because she didn't want to have anything to do with them. No, the personal representative of the estate is the only thing that Section 33G is referring to when it refers to a personal representative. It's defined earlier in Section 33. The personal representative means the personal representative of the deceased in a death case. And the daughter did become that before these settlements were affected, because with the previous defendants who had not settled during the decedent's lifetime. The simple fact that I think the defendants are overlooking, and perhaps the ALJ and board were as well, although that's been recognized lots of times in earlier cases and other circumstances, is that Section 33G, yes, 33F gives the employer a subrogation interest in rights against tort for either for the injury with respect to the workers' lifetime rights, or with respect to the survivors in the case of a death. Section 33F gives a credit only for the recoveries by that person for that cause of action. In other words, if the wife during the injured worker's lifetime had brought a loss of consortium claim, any recovery on that claim would not be creditable against her future potential rights to death benefits, because it's not for the same cause of action. It's not for the death. Any recovery she has for the death would indeed be offset against their liability for death benefits. So I think you... I hate to keep going around and around with this. I'll make this very brief. I thought you said that the daughter under 33G became the person's representative, and the person would be the decedents, would not be the widows. Right. Okay. Right. So then in the daughter's capacity as person's representative, is your argument then that she did not enter into a settlement with the third person that would then trigger... The daughter did, but the widow... But it just would not bind the widow. Correct. It would not be the widow entering into a settlement, back to the statutory terms. She didn't enter into that settlement. Again, if she had accepted proceeds from those settlements, arguably by doing that, she ratifies the action of her daughter and would be barred under Section 33G. But she did not. There's not a shred of evidence that she received penny one. She explicitly denied it. The ALJ didn't think she was very credible, but there certainly was no evidence to the contrary, and the ALJ did not find to the contrary. All right. Thank you. If I may, just one final point. The Supreme Court in the Yates case, which we've also cited, made it clear, and this court subsequently in force, made it clear that the purpose of Section 33G, generally to protect the employer against recovery or reduction of its subrogation rights, that general purpose is not coextensive with the scope of the provision. That is, if you settle the wrongful death rights before your spouse even dies, which is allowed, that recovery is not offset against your right to death benefits. That's the Supreme Court in the Yates case, four or five years after they decided the Cowart case, said we have to apply it according to its terms, even though that result is sometimes harsh in Cowart, but we also apply it in terms, even though that does not really protect the employer's subrogation interest, if the settlement of the wrongful death actions occur before the widow becomes a person entitled to compensation. This is another instance in which the employer's right to subrogation to reduce its liability under the Act is prejudiced by some action, in this case, the failure to bring a wrongful death action by the widow. Thank you. Thank you. So the case of Beverly Hale v. Bay, System San Francisco Ship Repair, Incorporated, submitted.
judges: Rawlinson, Callahan, Bolton